IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


HOLLIE VAN ZANDT,                          08-CV-6390-BR

        Plaintiff,

                                           OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.


KATHRYN TASSINARI
MARK A. MANNING
Harder, Wells, Baron & Manning P.C.
474 Willamette, Suite 200
Eugene, Oregon 97401
(541) 686-1969

        Attorneys for Plaintiff

1 - OPINION AND ORDER

**DWIGHT C. HOLTON**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**LEISA A. WOLF**
Office of the General Counsel
**MICHAEL S. HOWARD**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2495

       Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Hollie Van Zandt seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Van Zandt's protective application for Social Security Income (SSI).  This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

     Following a review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.


<u>**ADMINISTRATIVE HISTORY**</u>

     Van Zandt filed her application for SSI on May 27, 2004.

2 - OPINION AND ORDER

Tr. 93-96.[1]  Her application was denied initially and on
reconsideration.  Tr. 33-36, 40-42.  An Administrative Law Judge
(ALJ) held a hearing on July 17, 2007, and on July 23, 2008.
Tr. 716-80.  At the hearings, Van Zandt was represented by an
attorney.  Tr. 716, 758.  Van Zandt, lay witness Kit Pitcher, and
a vocational expert (VE) testified at the first hearing.
Tr. 716-57.  Van Zandt and a VE testified at the second hearing.
Tr. 758-80.

       The ALJ issued an opinion on July 23, 2008, in which he
found Van Zandt is not disabled and, therefore, is not entitled
to benefits.  Tr. 14-26.  On October 3, 2008, that decision
became the final decision of the Commissioner when the Appeals
Council denied Van Zandt's request for review.  Tr. 8-10.


                            **BACKGROUND**

       Van Zandt was 25 years old at the time of the first hearing
and was 26 years old at the time of the second hearing.  Tr. 93,
720, 768.  She completed the fifth grade and received her GED.
Tr. 249, 262, 721.  Van Zandt has performed past work as a
teacher's aide, sandwich maker, care giver, and telemarketer.
Tr. 113, 132, 754.  Van Zandt alleges a disability onset date of
January 1, 1985.  Tr. 93.

_____

       [1]Citations to the official transcript of record filed by the
Commissioner on July 1, 2009, are referred to as "Tr."

3 - OPINION AND ORDER

Van Zandt was diagnosed with recurrent migraine headaches at the age of three and has suffered from increasingly frequent and intractable headaches since that time.  Tr. 454, 458, 549, 598. She was diagnosed with hyperthyroidism at age nine and had a thyroidectomy at age 21 to remove her cancerous thyroid. Tr. 166-71, 246, 610.  Van Zandt has been diagnosed with chronic lumbar pain resulting from scoliosis of the spine, mild to moderate degenerative disk disease of the lumbar spine, sciatica, and lumbar radiculitis.  Tr. 359-60, 379-80, 623-24.  In December 2007 Van Zandt underwent a surgical diskectomy to relieve nerve impingement at the L5-S1 level in her lower back.  Tr. 665-73.

Van Zandt has also been diagnosed with chronic maxillary sinusitis, allergic rhinitis, morbid obesity, polycystic ovary syndrome, depression, adjustment disorder, and personality disorder.  Tr. 189, 215, 390, 434, 610.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."

4 - OPINION AND ORDER

42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

5 - OPINION AND ORDER

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. § 416.920.  Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R. § 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 416.920(a)(4)(iii).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed

Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in

the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20
C.F.R. § 416.920(a)(4)(v).  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can perform.  *Tackett v.
Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may
satisfy this burden through the testimony of a VE or by reference
to the Medical-Vocational Guidelines set forth in the regulations
at 20 C.F.R. part 404, subpart P, appendix 2.  If the
Commissioner meets this burden, the claimant is not disabled.
20 C.F.R. § 416.920(g)(1).


## ALJ'S FINDINGS

At Step One, the ALJ found Van Zandt has not engaged in
substantial gainful activity since May 20, 2004.  Tr. 18A.

At Step Two, the ALJ found Van Zandt has the severe
impairments of migraine headaches, obesity, degenerative disk
disease of the lumbar spine, adjustment disorder, and personality
disorder.  Tr. 18A.

At Step Three, the ALJ found Van Zandt is capable of
"sedentary work . . . except that she is limited to simple tasks,
occasional public contact, and should not be required to engage
in close interaction with co-workers."  Tr. 19.  The ALJ did not
otherwise specifically describe Van Zandt's RFC.

At Step Four, the ALJ concluded Van Zandt "has no past

relevant work." Tr. 24.  Thus, the ALJ proceeded to Step Five.

At Step Five, the ALJ concluded Van Zandt is capable of performing other jobs that exist in significant numbers in the national economy such as semi-conductor assembler, survey-systems monitor, and small-products assembler. Tr. 24-25.  Accordingly, the ALJ found Van Zandt is not disabled and, therefore, is not entitled to benefits.  Tr. 16.


## DISCUSSION

Van Zandt contends the ALJ erred by (1) failing to provide clear and convincing reasons for discrediting Van Zandt's statements about the intensity, persistence, and limiting effects of her symptoms; (2) failing to give proper weight to the opinions of Dawn Bost, M.D., and Lyle Torguson, M.D., Van Zandt's treating physicians,; and (3) failing to find Van Zandt disabled at Step Five on the basis of the testimony of the VE.

## I.   The ALJ's finding that Van Zandt's testimony was not credible.

Van Zandt contends the ALJ erred when he failed to provide clear and convincing reasons for rejecting Van Zandt's subjective symptom testimony.

The test for rejecting a claimant's subjective symptom testimony is set out in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir.

9 - OPINION AND ORDER

1991).  The *Cotton* test establishes two basic requirements for a claimant to present credible symptom testimony:  She must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d at 1407.  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Lester*, 81 F.3d at 834.  *See also Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General assertions that the claimant's testimony is not credible are insufficient.  "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Van Zandt satisfied the *Cotton* test by providing evidence that she has medically determinable impairments that could be expected to produce some degree of the symptoms she alleges.  Tr. 13.  The ALJ, however, determined Van Zandt's subjective testimony about the "intensity, persistence, and limiting effects" of her symptoms "are not credible to the extent they are inconsistent with the residual functional

10 - OPINION AND ORDER

capacity assessment." Tr. 13.  The ALJ did not find Van Zandt is
malingering or identify any affirmative evidence of malingering.
Thus, the ALJ must provide clear and convincing reasons for
rejecting Van Zandt's symptom testimony.  *Lester*, 81 F.3d at 834.
Moreover, the Commissioner concedes in his responsive brief that
the clear-and-convincing standard applies.

Van Zandt testified she suffers from almost constant
headaches and debilitating lower-back pain that radiates down
both legs.  Tr. 725-26, 737-38.  Van Zandt attested even though
she has tried and had some success with numerous medications for
her migraine headaches, they have been ineffective at providing
her with lasting relief and she must receive emergency medical
care regularly.  Tr. 726-29, 735-36, 765.  Although she testified
she is generally able to care for her daughter, Van Zandt
requires help from her mother and her neighbors when she suffers
from the worst head-and-back pain in order to perform most of her
activities of daily living.  Tr. 730-31.  Van Zandt testified she
cannot maintain a regular work routine due to frequent, severe
migraine headaches that require her to rest in a dark room for
hours at a time.  Tr. 739-40.  She attested the most effective
medication takes an hour to provide relief.  Tr. 739-40.
Moreover, Van Zandt stated severe lower-back pain limits her
ability to sit for prolonged periods and to perform activities of
daily living including washing dishes and mopping the floor,

11 - OPINION AND ORDER

chores for which she receives assistance from her mother.
Tr. 732, 738-39, 742-43, 763.  The severe back pain also forces
Van Zandt to rest after short periods of standing.  Tr. 738-39.

The ALJ discredited Van Zandt's testimony on the following
grounds:  (1) her trip to Mexico in 2004 is inconsistent with
her claims of disability, (2) she made inconsistent statements
that undermine her credibility, (3) she does not exhibit pain
behavior despite her allegations of constant pain, (4) her
symptoms are controlled by medication, (5) she exaggerates her
symptoms, (6) she has avoided participation in JOBS programs, and
(7) she lacks objective medical evidence to substantiate the
symptoms of her migraine headaches.  Tr. 20-23.

### A.    Trip to Mexico.

The ALJ discredited Van Zandt's testimony partly based on
Van Zandt's five-day trip to Mexico in December 2004.  Tr. 23.
The ALJ does not provide any further explanation as to why a
single trip contradicts Van Zandt's statements about the nature
of her symptoms or why such a trip demonstrates Van Zandt is able
to perform work-related functions.  In any event, a claimant's
ability to engage in periodic travel does not undermine a
claimant's pain testimony.  *Howard v. Heckler*, 782 F.2d 1484,
1488 (9th Cir. 1986)("[T]o find [the claimant's] claim of
disability gainsaid by his capacity to engage in periodic
restricted travel, as the Council seems to have done, trivializes

12 - OPINION AND ORDER

the importance that we consistently have ascribed to pain

testimony.").  Moreover, the Ninth Circuit has held:

> This court has repeatedly asserted that the
> mere fact that a plaintiff has carried on
> certain daily activities . . . does not in
> any way detract from his credibility as to
> his overall disability.  One does not need to
> be 'utterly incapacitated' in order to be
> disabled."  *Vertigan v. Halter*, 260 F.3d
> 1044, 1050 (9th Cir.2001)(quoting *Fair v.
> Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

*Benecke v. Barnhart*, 379 F.3d 587, 593-94 (9th Cir. 2004).  Thus,

the mere fact that Van Zandt was able to travel to Mexico in 2004

is not a basis for discrediting Van Zandt's credibility.

**B.  Inconsistent statements.**

The ALJ also found Van Zandt made inconsistent statements

regarding the pain in her legs and the frequency of her headaches

that undermined her credibility.  Tr. 21-22.  Specifically, the

ALJ discredited Van Zandt on the ground that she testified she

suffers from pain in her left leg that radiates from her lower

back, but she told one of her treating physicians, Scott H.

Kitchel, M.D., that she had pain in her right leg.  Tr. 22.

Ironically, the ALJ reported in his summary of Van Zandt's

symptoms that she "described constant, burning pain in her back

radiating down *both her legs* that is aggravated by any activity."

Tr. 20.  The record contains numerous statements by Van Zandt to

her physicians complaining of pain radiating down both legs.

Tr. 312, 315, 672.  Moreover, another one of Van Zandt's treating

13 - OPINION AND ORDER

physicians, Dr. Bost, noted Van Zandt has a pinched nerve in her lumbar spine that causes radiating pain in her left leg and sciatica that causes pain in her right leg.  Tr. 319-21.  Finally, after Dr. Kitchel performed a diskectomy to address a bulging disk that was the source of Van Zandt's radiating pain in her left leg, Dr. Kitchel expressed his concern that Van Zandt was suffering from recurrent herniations that cause ongoing pain in her legs.  Tr. 709.

The ALJ also discredited Van Zandt's symptom testimony on the ground that she made inconsistent reports about the frequency of her migraine headaches.  Tr. 21.  Indeed, the record reflects Van Zandt's reports of the frequency of her migraine headaches varies from as few as one to as many as five migraines a week as well as headaches that last weeks at a time.  The record also reflects Van Zandt's headaches are triggered by numerous things, including diet; menstruation; stressors such as those associated with work; and exposure to bright light, loud noises, and strong odors.  Tr. 187, 268, 456, 527, 552, 598.  Moreover, the record reflects Van Zandt regularly relies on emergency-room treatment for her headaches as often as several times a month.  Tr. 185-88, 463-70, 477-79, 572-83, 590, 644-51.  Kit Pitcher, Van Zandt's mother, testified at the first hearing before the ALJ that she has accompanied Van Zandt to the emergency room up to eight times in a month.  Tr. 750.  Thus, the mere fact that Van Zandt's

headaches do not occur on a regular schedule and fluctuate in frequency does not undermine Van Zandt's testimony.  In fact, the record reflects Van Zandt has a history of frequent migraines over more than 20 years.

**C.    Lack of pain behavior.**

The ALJ also discredited Van Zandt's subjective symptom testimony with respect to her migraines and back pain on the ground that she was able to sit throughout both hearings before the ALJ and to participate in her field-office interview without exhibiting pain behavior.  Tr. 13.  Specifically, the ALJ concluded "statistically, the claimant should have had a migraine precluding her ability to function" during one of the hearings. Tr. 21.  The ALJ did not describe the basis for his "statistical analysis" that Van Zandt should have had a debilitating migraine during hearings that were 50 and 39 minutes long respectively. Tr. 718, 757, 760, 780.  The record reflects, however, that Van Zandt testified at the first hearing before the ALJ that she had a headache during the hearing, but it was not the type of migraine that completely disables her.  Tr. 734-35.  In addition, the record reflects the field-office interviewer noted Van Zandt stated during her interview that her back hurt while she was seated during the hour-long interview.  Tr. 111.

In any event, the ALJ cannot rely on his personal observations of Van Zandt's purported lack of pain behavior as a

15 - OPINION AND ORDER

basis for discrediting her testimony.  *See Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985)(rejected "sit and squirm" test of credibility).  *See also Irwin v. Shalala*, 840 F. Supp. 751, 763 (D. Or. 1993)(court noted the Ninth Circuit's disapproval of the "sit and squirm" or "droop and yawn" tests based on ALJ observations of a claimant because it "has little validity. . . . The fact that adrenaline gives the claimant enough energy to remain alert and focused for an hour and a half under these conditions says nothing about her ability to function daily in a work setting.").

   **D.   Efficacy of Van Zandt's medication.**

   The ALJ also discredits Van Zandt's testimony on the ground that medication is generally effective in controlling Van Zandt's migraine pain.  Tr. 21.  The ALJ refers to the treatment notes of Dr. Bost, who stated in August 2004 that the prescription drug Maxalt provided Van Zandt with relief from her migraines. Tr. 266.

   The record since August 2004, however, reflects Van Zandt has continued to suffer from migraine headaches.  Her physicians have prescribed numerous medications that often work for a short time but fail to provide long-term relief.  Tr. 458, 547, 554. For example, Dr. Torguson noted in his treatment notes dated March 19, 2007, that Van Zandt has "tried nearly everything" with limited success.  Tr. 554.  In addition, Scott Emery, M.D., one

16 - OPINION AND ORDER

of Van Zandt's treating physicians, expressed his pessimism about her improvement with medication over the short-term and stated it is difficult to predict how she will respond to medications. Tr. 598.  Moreover, the record reflects Van Zandt's insurance covers only limited amounts of Maxalt and Imitrex, which are the medications that have provided Van Zandt with some relief. Tr. 433, 469, 739.  As a result, she regularly seeks emergency care to treat her migraines.

**E. Exaggerated symptoms.**

The ALJ also discredits Van Zandt on the ground that she exaggerates her symptoms.  Tr. 20-23.  The ALJ identified the following as evidence of Van Zandt's exaggeration:  (1) Van Zandt's complaint of severe knee pain on April 10, 2003, for which her physician could not find any cause; (2) a statement by one of Plaintiff's treating physicians, Paul J. Steier, D.O., that Van Zandt was "histrionic" during an August 2, 2007, office visit; (3) the observation by emergency-room physician, Gary Halvorson, M.D., that Van Zandt could walk on her toes during his examination on August 1, 2007; and (4) the "fact" that Van Zandt "suddenly raised complaints of having been molested at age two or three, which is not anywhere referenced in the record."  Tr. 20-23.

**1. Unexplained pain.**

On April 10, 2003, Van Zandt sought emergency treatment

for excruciating pain in her left knee.  Tr. 179-80.  Kimberly
Cronin, M.D., examined Van Zandt's left knee and stated:  "I am
having a hard time explaining her severe excruciating pain
without any evidence of soft tissue or cartiliginous damage."
Tr. 179.  The ALJ cites Dr. Cronin's statement as evidence of Van
Zandt's tendency to exaggerate.  Tr. 20.  Dr. Cronin, however,
opined Van Zandt's knee pain could be related to her sciatica,
but the "most likely diagnosis would be a patella/femoral
syndrome."  Tr. 180.  Moreover, Dr. Cronin noted "[s]ymptom
relief is definitely necessary as she is in so much pain."  Tr.
180.  Dr. Cronin did not express any belief that Van Zandt was
exaggerating her symptoms.  In fact, Dr. Cronin accepted the
nature of Van Zandt's complaints and proceeded to diagnose and to
treat those symptoms.  Tr. 180.

        The ALJ also refers to the treatment notes of Dr. Bost
from July 30, 2003, in which she noted Van Zandt's "exquisite
tenderness" in the area of her right sciatic notch.  Tr. 319-20.
Dr. Bost, however, notes even though Van Zandt's MRI only shows
nerve impingement on Van Zandt's left side, her complaints are
consistent with sciatica on her right side.  Tr. 320.  Thus,
Dr. Bost did not conclude Van Zandt was exaggerating and accepted
the accuracy of Van Zandt's symptomology to the extent that she
stated a diagnosis for and provided treatment of those symptoms.
Tr. 319-20.

18 - OPINION AND ORDER

##       2.    Examinations on August 1 and 2, 2007.

The ALJ found Dr. Halvorson's observation on August 1, 2007, that Van Zandt could walk on her toes and Dr. Steier's description of Van Zandt's presentation on August 2, 2007, as "somewhat histrionic" to be bases for discrediting Van Zandt. Tr. 20.  On both days Van Zandt complained of severe lower-back pain with radiating pain down her left leg.  Tr. 608, 657. Despite his finding that Van Zandt could walk on her toes during the examination, Dr. Halvorson noted Van Zandt's complaints about pain were "chronic," treated her with hydromorphone intra-muscularly, and arranged for Van Zandt to see Dr. Steier immediately.  Tr. 657.  Dr. Halvorson did not expressly discount Van Zandt's complaints.

On August 2, 2007, Dr. Steier examined Van Zandt again. Despite his comment about Van Zandt's "somewhat histrionic" presentation, Dr. Steier requested an MRI of her lumbar spine. Tr. 608-11.  The MRI revealed scoliosis, mild to moderate degenerative changes in her lumbar spine, a disk protrusion at L5-S1 that effaced the nerve root, and lumbar radiculitis. Tr. 623-24.  Three weeks later Van Zandt visited Dr. Kitchel with continuing complaints of severe back pain and radiating pain in her left leg.  Tr. 636.  In his treatment notes, Dr. Kitchel stated Van Zandt may need a lumbar diskectomy on the basis of the August 2, 2007, MRI and his examination.  Tr. 636-39.  On

19 - OPINION AND ORDER

September 25, 2007, after injections and physical therapy failed
to relieve her pain, Dr. Kitchel recommended Van Zandt have
surgery to relieve the nerve impingement caused by her protruding
disk.  Tr. 663A.  The ALJ draws selectively from Dr. Kitchel's
notes in which he states the surgery was to be "scheduled at [Van
Zant's] convenience," which suggests the surgery was somehow
unnecessary.  Tr. 633A.  In the sentence preceding the ALJ's
quote, however, Dr. Kitchel's notes reflect he believed "this
[surgery] is medically indicated and necessary."  Tr. 633A.

Thus, when the treatment records of Drs. Kitchel,
Steier, and Halvorson are considered in the context of the record
as a whole, Van Zandt's complaints of severe back and leg pain
are corroborated by diagnostic evidence, the recommendations of
her physicians, and the required surgical intervention.

### 3.    Complaints about molestation.

The ALJ also asserts Van Zandt's references to her
belief that she was molested as a child are not corroborated by
the record and are examples of Van Zandt's "demonstrated efforts
of exaggeration in order to obtain benefits."  The record,
however, reflects Van Zandt made repeated references to her
belief that she had been molested at an early age at least as
early as December 2000, which was nearly four years before she
applied for Social Security benefits and nearly eight years
before the ALJ issued his opinion.  Tr. 248, 258, 261, 388.

20 - OPINION AND ORDER

**F.    Avoiding work.**

Finally, the ALJ discredits Van Zandt's testimony on the ground that she has made repeated efforts to avoid work (even part-time) and to be exempted from the JOBS program.  Tr. 23.  In support of his conclusion, the ALJ cites to numerous places in the record such as a mental-health intake assessment that does not contain any mention of Van Zandt's work-related history and contains an examiner's comment that Van Zandt's primary work history (at the age of 22) consisted of four years of work as a nanny.  Tr. 23, 246-50.  The ALJ also cites to Dr. Bost's report on July 30, 2003, that Van Zandt suffers from a pinched nerve and sciatica in her lower back, which prevent her from working. Dr. Bost opines Van Zandt is unable to sit for any length of time and cannot work comfortably due to her symptoms, which limit her ability to bend, lift, climb, squat, kneel, or perform any kind of manual labor that strains her back.  Tr. 321.  As noted, Dr. Bost's diagnosis of a pinched nerve in Van Zandt's lumbar spine was verified by an MRI in August 2007 and required surgical intervention.

The ALJ also cites to a letter by Dr. Torguson as evidence of Van Zandt's nonparticipation in the JOBS program.  Tr. 509. Dr. Torguson describes injuries to Van Zandt's neck and shoulder sustained in an automobile accident and his treatment of Van Zandt for those injuries.  In the letter, Dr. Torguson explains

21 - OPINION AND ORDER

Van Zandt's resulting limited ability to use her right arm and
shoulder.  Tr. 509.  Dr. Torguson also responds to a request by
the Oregon Department of Human Services for his assessment of Van
Zandt's medical limitations.  Tr. 510-11.  In his response, Dr.
Torguson reports Van Zandt is disabled by her frequent headaches
and states her participation in job-training programs is limited
to four hours a week.  Tr. 510.  Finally, the ALJ notes
Dr. Torguson signed a certification of disability for Van Zandt's
housing benefits through the United States Department of
Agriculture-Rural Development program.  Tr. 544.

    None of these parts of the record, however, discredit Van
Zandt's testimony that she is disabled by her symptoms and cannot
maintain a regular work schedule.  In fact, the parts of the
record cited by the ALJ tend to corroborate Van Zandt's testimony
that she is disabled by her impairments.  Moreover, the record
reflects Van Zandt has several years of work history as a
teacher's aide, sandwich maker, care giver, and telemarketer,
which contradicts the ALJ's assertion that Van Zandt is not
motivated to work even part-time.  Tr. 113, 132, 754.

    In summary, the Court concludes the ALJ erred when he
rejected Van Zandt's subjective symptom testimony without
providing clear and convincing reasons supported by substantial
evidence in the record for doing so.

## II.  The ALJ's failure to properly weigh the opinions of Drs. Bost and Torguson.

Van Zandt contends the ALJ did not give proper weight to the opinions of her treating physicians, Drs. Bost and Torguson.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007)(quoting *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is

23 - OPINION AND ORDER

supported by other evidence in the record.  *Id.* at 600.

Here the ALJ gave "less weight" to the opinions of Drs. Bost and Torguson than to the opinions of two nonexamining physicians who concluded Van Zandt was not disabled.  Tr. 23-24.

**A.   Dr. Bost's Opinion.**

Dr. Bost was Van Zandt's treating physician for over two years between 2002 and 2004.  Tr. 264-358.  Dr. Bost diagnosed Van Zandt with, among other things, chronic lower-back pain with radiculopathy, degenerative disk disease, sciatica, lumbar-disk herniation, chronic migraine headaches, chronic sinusitis, allergic rhinitis, and morbid obesity.  Tr. 268, 271, 281, 295, 298.  The record reflects Dr. Bost opined Van Zandt's impairments precluded her ability to work.  Tr. 311, 321, 325, 331.  Dr. Bost stated Van Zandt's medical impairments limit her ability to sit or to lay down for prolonged periods; to drive, to bend, to lift, to squat, to kneel, and to climb; or to perform any manual labor that may strain her back.  Tr. 319, 321.

**B.   Dr. Torguson's Opinion.**

Dr. Torguson was Van Zandt's treating physician for nearly two years from 2006 to 2008.  Tr. 509-10, 513-26, 558-59, 600-01, 606-07, 690-92, 695-96.  Dr. Torguson diagnosed Van Zandt with migraine headaches, chronic rhinitis, anxiety, and morbid obesity.  Tr. 510, 513-26, 600-01.  Dr. Torguson also treated Van Zandt for neck and shoulder injuries sustained in a motor-vehicle

accident in November 2005.  Tr. 509, 513-14.  Dr. Torguson opined
on two occasions that Van Zandt is disabled and is unable to work
because her migraine headaches limit her ability to sit in
training classes for "maybe up to one hour a week," to use the
telephone or the internet to gather employment information for
more than one hour a week, to attend job and treatment counseling
sessions for more than one hour a week, or to contact employers
by telephone or mail for more than one hour a week.  Tr. 510,
544. Dr. Torguson also stated Van Zandt is unable to perform even
sedentary work for skills training.  Tr. 510.

**C.   ALJ's Decision.**

As noted, the ALJ gave the opinions of Drs. Bost and
Torguson "less weight" than the opinions of "the state agency
medical consultants" who were nonexamining physicians.  Tr. 23-
24.  The ALJ did not find any medical evidence in the record
other than the opinions of nonexamining psychologist Frank
Lahman, Ph.D., and nonexamining physician Sharon Eder, M.D., that
contradicted the opinions of Drs. Bost and Torguson.  Tr. 406-17.
Moreover, the ALJ did not provide any basis for giving greater
weight to these nonexamining physicians' opinions other than his
assertion that they "are supported by the overall record."
Tr. 24.

The ALJ provided the following reasons for discrediting the
opinions of Drs. Bost and Torguson:  (1) their opinions are based

25 - OPINION AND ORDER

on subjective evidence rather than objective clinical or diagnostic findings and (2) neither physician provided functional limitations from which the ALJ could make an assessment of Van Zandt's work-related capacity.  Tr. 23-24.

1.    **Sole reliance on subjective evidence.**

The ALJ found the record contained objective medical evidence sufficient to support a finding that Van Zandt's impairments (migraine headaches, obesity, and degenerative disk disease) are severe.  Tr. 18A-19.  Specifically, the record contains numerous MRIs of Van Zandt's back detailing the multiple impairments of her spine.  Tr. 359, 379-80, 623, 665, 670, 672, 708.  Moreover, even though the MRI of Van Zandt's brain was not conclusive as to the cause of her migraines, MRIs of her brain revealed a tumor or cyst on her pineal gland as well as mucosal thickening in her sinuses and a cyst in her nasopahrynx.  Tr. 566.  Thus, the opinions of Drs. Bost and Torguson regarding Van Zandt's impairments are based on diagnostic findings as well as Van Zandt's subjective complaints.  Nevertheless, the ALJ concluded the opinions of Drs. bost and Torguson were based solely on subjective evidence.

The record reflects Drs. Bost and Torguson have had long-standing relationships with Van Zandt as her treating physicians, which makes them "especially qualified to evaluate reports from examining doctors, to integrate the medical

26 - OPINION AND ORDER

information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment." *Id*. at 833. The ALJ must "give weight not only to the treating physician's clinical findings and interpretation of test results, but also to [their] subjective judgments." *Id*. at 832-33.

As noted, the record contains substantial evidence to support the opinions of Drs. Bost and Torguson. In addition, Dr. Kitchel, one of Van Zandt's treating physician who performed her lumbar diskectomy in December 2007, confirmed Van Zandt's lumbar-disk herniation with radiculopathy based on an MRI of her spine. Tr. 636-39. Dr. Kitchel also noted Van Zandt's ongoing symptomology after her surgery and relied on a post-operative MRI indicating possible additional herniations. Tr. 708-09. Dr. Steier, who treated Van Zandt on numerous occasions for migraine headaches, confirmed the diagnosis of intractable, recurrent migraine headaches and noted the pineal gland cyst shown in the MRI of her brain. Tr. 547-64. Finally, Dr. Emery, who also treated Van Zandt for migraine headaches, confirmed the diagnoses of chronic headaches, migraine without aura, and chronic back pain. Tr. 648-89. In his August 2007 letter to the ALJ, Dr. Emery repeated his diagnosis of Van Zandt's headaches as migraines without aura and noted some people are significantly disabled by such a condition. Tr. 598. Dr. Emery stated

triggers for such headaches include work-related stress, overuse of medications, bright lights, strong odors, and loud noises. Tr. 598.  Ultimately Dr. Emery concludes Van Zandt's long-term prognosis is fair, but he could not predict her response to medications and expressed his pessimism regarding Van Zandt's short-term prognosis.  Tr. 598.  Thus, the opinions of Drs. Bost and Torguson are consistent as to the diagnoses, treatments, and descriptions of Van Zandt's limitations and are supported by the record.

### 2.   Lack of specific functional limitations.

The ALJ also stated Drs. Bost and Torguson did not provide any functional limitations as to Van Zandt's disability on which the ALJ could base a finding that Van Zandt cannot perform work-related functions on a regular and continuing basis. Tr. 23-34.  As noted, however, both physicians included Van Zandt's functional limitations in their opinions.  Tr. 319, 321, 510.

In summary, the Court finds the ALJ has not identified any medical evidence in the record that contradicts the opinions of treating physicians Drs. Bost and Torguson other than the opinions of nonexamining physicians, and, in fact, the record contains substantial medical evidence to support the opinions of both Drs. Bost and Torguson.  Moreover, the ALJ's bases for discrediting the opinions of Drs. Bost and Torguson as to Van

Zandt's impairments and functional limitations are not supported by the record.

The Court, therefore, concludes on this record that the ALJ erred when he gave less weight to the opinions of Drs. Bost and Torguson than to those of the nonexamining physicians without providing legally sufficient reasons supported by substantial evidence in the record for doing so.


## REMAND

Having found the ALJ erred when he improperly discredited Van Zandt's subjective symptom testimony and the opinions of Drs. Bost and Torguson, the Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award

of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.*  The second and third prongs of the test often merge into a

single question:  Whether the ALJ would have to award benefits if

the case were remanded for further proceedings.  *Id.* at 1178 n.2.

In determining whether the record is complete, the Ninth Circuit

has held:

> [W]e notice that no vocational expert has
> been called upon to consider all of the
> testimony that is relevant to the case. This
> court recently wrote that "[i]n cases where
> the vocational expert has failed to address a
> claimant's limitations as established by
> improperly discredited evidence, we
> consistently have remanded for further
> proceedings rather than payment of benefits."
> In addition, the testimony given was not
> clear as to the duration of Ms. Bunnell's
> difficulties. To be found disabled, a
> claimant must be unable to work for twelve
> consecutive months. The duration of Ms.
> Bunnell's impairments must, therefore, be
> clarified.

*Bunnell v. Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003)(citing

*Harman*, 211 F.3d at 1180)(internal citation omitted).  Testimony

of a VE, however, as to the claimants particular limitations in

the record is not an absolute requirement if "it is clear from

the record that the claimant is unable to perform gainful

employment in the national economy." *Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004)(remanding for award and calculation of benefits despite VE testimony as to claimant's functional limitations when record clearly established claimant could not perform even sedentary work).

Because the ALJ did not provide sufficient reasons for discrediting the opinions of Drs. Bost and Torguson, the Court credits those opinions as true. *See Benecke,* 379 F.3d at 594 (when "the ALJ fail[s] to provide legally sufficient reasons for rejecting . . . [a] physician['s] opinion[]," the court credits that opinion as true). *See also Lester*, 81 F.3d at 834 (improperly-rejected physician opinion is credited as a matter of law). Because the ALJ did not provide sufficient reasons for discrediting Van Zandt's subjective-symptom testimony, the Court also credits her testimony as true. *See Vasquez v. Astrue*, 572 F.3d 586, 593-94 (9th Cir. 2009).

When credited, the medical opinions and Van Zandt's testimony establish Van Zandt's impairments of her lower back restricts her ability to sit or to stand for prolonged periods and requires her to rest a minimum of 40 minutes per day to relieve pain in her back. Tr. 321, 738-40, 767. Van Zandt's lower-back impairments also limit her ability to drive, to bend, to lift, to squat, to kneel, to climb, or to perform any manual labor that may strain her back. Tr. 319, 321. Moreover, Van

31 - OPINION AND ORDER

Zandt suffers from recurrent, intractable migraine headaches that require her to rest a minimum of one hour with the most effective prescription to relieve her pain.  Tr. 739-40.  On multiple days per month, Van Zandt must spend most of the day lying down and resting due to migraines, which incapacitate her and often require emergency treatment for relief.  Tr. 732-34, 750-51. According to Dr. Torguson, Van Zandt's migraines limit her performance of such work-related functions as training, telephone or internet use, job searches, and counseling to roughly four hours per week.  Tr. 510.  According to Dr. Emery, the stress of working increases the risk that Van Zandt will suffer migraine headaches.  Tr. 598.

In addition, the VE testimony clearly establishes Van Zandt is unable to sustain any type of employment in the competitive economy based on her limitations.  At the second hearing before the ALJ, the VE testified a person with such limitations could not maintain regular employment.  Tr. 772.  Moreover, the VE testified a hypothetical employee who required a minimum of two 20-minute breaks per day to manage pain symptoms would not be able to maintain employment in the competitive economy.  Tr. 775.

On the basis of the opinions of Drs. Bost, Torguson, and Emery and the testimony of Van Zandt, Kit Pitcher, and the VE, the Court concludes the record establishes that Van Zandt cannot sustain work-related activities on a regular and continuing basis

32 - OPINION AND ORDER

and, therefore, is disabled and entitled to benefits.  Thus, a remand for additional proceedings would not serve any useful purpose.

### CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

IT IS SO ORDERED.

DATED this 12th day of March, 2010.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District

33 - OPINION AND ORDER